# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DARLA MARIE CRIGER,

       *Plaintiff,*

  vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       *Defendant.*

Case No. 13-1369-EFM

## MEMORANDUM AND ORDER

Plaintiff Darla Criger seeks review of a final decision by the Commissioner of Social Security denying her application for disability and disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Criger alleges that the Commissioner's decision should be reversed because the Administrative Law Judge (ALJ) erred by failing to adopt the opinions of her treating physician in forming her residual functioning capacity. Criger also alleges that the ALJ's credibility determination was unsupported by the substantial evidence of the record and that the ALJ's decision was unsupported by the substantial evidence of the record. The Court finds that the ALJ did not err in assessing Criger's residual functioning capacity and that the ALJ's credibility determination and decision were supported by substantial evidence. Having reviewed the record, and as described below, the Court affirms the order of the Commissioner.

# I. Factual and Procedural Background

Darla Criger was born January 24, 1965. On November 5, 2010, Criger protectively filed for disability insurance benefits, and on February 11, 2011, protectively filed for supplemental security income alleging a disability onset date of November 18, 2010. Criger alleged that she was unable to work because of ankylosing spondylitis with kyphosis of the cervical and thoracic spine, a back disorder characterized by inflammation of the vertebrae and an abnormal curvature of the spine. Her application was denied initially and on reconsideration in 2011. Criger then asked for a hearing before an administrative law judge.

ALJ Gilbert Rodriguez conducted an administrative hearing by video on September 9, 2011. Criger was represented by counsel at this hearing, and she testified about her medical conditions. A vocational expert also testified.

On November 23, 2011, the ALJ issued his written decision, finding that Criger had not engaged in substantial gainful activity since the alleged onset date of November 18, 2010. The ALJ found that Criger suffered from the severe impairment of ankylosing spondylitis with kyphosis of the cervical and thoracic spine. The ALJ found that Criger's impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ determined that Criger had the residual functional capacity to perform sedentary work, which involves lifting no more than 10 pounds at a time and sitting with occasional walking and standing. The ALJ found that Criger could stand for about two hours and sit for at least six hours in an eight-hour workday. The ALJ found that Criger was not limited in pushing or pulling with her arms and legs, was limited to occasional postural activities, and could not

reach overhead. The ALJ found that Criger had no communicative, visual, or environmental limitations.

The ALJ then determined that Criger was unable to perform any of her past relevant work. But after considering Criger's age, education, work experience, and residual functioning capacity, the ALJ found that a significant number of jobs existed in the national economy that Criger could perform. Thus, the ALJ concluded that Criger had not been under a disability from November 18, 2010, through the date of his decision, November 23, 2011.

Criger requested reconsideration of the ALJ's decision, which was denied by the appeals council on August 14, 2013. Accordingly, the ALJ's November 2011 decision became the final decision of the Commissioner. Criger then filed a complaint in this Court, seeking reversal of the Commissioner's decision. Because Criger has exhaused all administrative remedies available, this Court has jurisdiction to review the decision.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act, which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[1] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

accept to support the conclusion."[3] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if she can "establish that [she] has a physical or mental impairment which prevents [her] from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that [she] is unable to perform [her] past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering [her] age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of

---

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [her] impairments."[10]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[12] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[13]

### III. Analysis

Criger asserts three arguments in favor of reversal. First, Criger argues that the ALJ erred by relying on the opinions of the non-examining, non-treating state agency physicians and by failing to adopt the opinions of Criger's treating physician, Dr. Scott Meyers. Second, Criger argues that the ALJ's credibility determination was unsupported by the substantial evidence of the record as a whole. Finally, Criger argues that the ALJ's decision also was not supported by

---

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

the substantial evidence of the record as a whole. The Commissioner contends that the ALJ properly formulated Criger's residual functioning capacity based on her credibility and the opinion evidence in the record.

## A. Evaluations of Medical Opinions Are Sufficiently Specific

The ALJ has a duty to consider all the medical opinions in the record and discuss the weight assigned to each opinion.[14] "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."[15] If the treating physician's opinion is not entitled to controlling weight, the ALJ still must determine what weight, if any, to assign to the opinion by considering the factors listed at 20 C.F.R. §§ 404.1527 and 416.927.[16] These factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.[17] The ALJ must give good reasons for the weight he assigns to the treating physician's opinion and must give specific, legitimate reasons if he completely rejects the opinion.[18] The ALJ is not required to expressly discuss each factor, but the reasons stated must be "sufficiently specific" to allow meaningful review.[19]

---

[14] *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014).

[15] *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted).

[16] *Id.* at 1176-77.

[17] 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

[18] *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

[19] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1300.

Generally, the ALJ should give more weight to opinions from treating sources over the opinions of other medical professionals.[20] But this Court has noted that opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating sources under appropriate circumstances.[21] The ALJ must follow a two-step procedure to determine the weight to assign a treating source's opinion.[22] A treating source's opinion about the nature and severity of impairment will be given controlling weight only if the opinion is: 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) consistent with other substantial evidence in the claimant's case record.[23] A treating source opinion is not entitled to controlling weight if it is deficient in either support or consistency with other evidence.[24] If a treating source opinion is not given controlling weight, it is still entitled to deference.[25]

Here, the ALJ assigned the opinion of Criger's treating physician, Dr. Meyers, "less weight."[26] The ALJ states, "I cannot give Dr. Meyers' opinions any significant weight, as his opinions are not well supported, and are disproportionate in severity to the preponderance of the medical evidence of record as described above."[27] Further, the ALJ notes that Dr. Meyers'

---

[20] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[21] *See Hayes v. Colvin*, 2014 WL 6609380, at *5 (D. Kan. Nov. 20, 2014).

[22] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[23] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[24] *Krauser*, 638 F.3d at 1330.

[25] *Hackett v. Barnhart*, 395 F.3d 1168, 1173-74 (10th Cir. 2005).

[26] Decision, Doc. 13-3, p. 34.

[27] Decision, Doc. 13-3, p. 34.

opinion that Criger is disabled cannot be entitled to controlling weight because that determination is an administrative finding reserved to the Commissioner.

The ALJ gave "greater weight" to the opinion of the state agency's medical personnel in formulating Criger's residual functioning capacity.[28] The ALJ concluded that the state agency opinions "are internally consistent and consistent with the evidence as a whole."[29] The state agency doctors found that Criger had the residual functional capacity for sedentary work with occasional postural limitations. The physical RFC assessment was completed by Dr. David Hicks in his role as a medical consultant in February 2011 and was affirmed by Dr. Jonathan Norcross in April 2011. The ALJ adopted this as Criger's residual functioning capacity with the addition of no overhead reaching.

First, Criger argues that it was reversible error for the ALJ to consider the opinions of non-medical personnel. The Commissioner concedes that the ALJ cited five exhibits of records prepared by non-medical state agency employees in addition to the assessments of Dr. Hicks and Dr. Norcross. But the text of the ALJ's decision discusses only the evaluations of the state agency's expert medical doctors, specifically the RFC evaluation prepared by Dr. Hicks and affirmed by Dr. Norcross. The only reference to the other five documents, which include internal requests for medical advice and notices, is in a citation to the record. The decision does not discuss these records or assign them any weight. Therefore, a review of the record and the ALJ's decision does not show that the ALJ gave any weight, or even considered, opinions of non-medical personnel.

---

[28] Decision, Doc. 13-3, p. 38.

[29] Decision, Doc. 13-3, p. 38.

Second, Criger argues that remand is required because the ALJ did not identify inconsistencies between Dr. Meyers' opinion and the objective medical evidence. The ALJ stated that "Dr. Meyers' opinion is inconsistent with his own objective findings and prescribed treatment, which has been relatively conservative. His opinion rendered in the form-type report lacks the accompaniment of any stated basis for his conclusions or opinions."[30] The ALJ also stated that Dr. Meyers' opinions "are disproportionate in severity to the preponderance of the medical evidence of record as described above."[31] Included in the ALJ's above description is the observation—with citation to exhibits—that medical records show that Criger's self-reported pain level was about the same as while she was working, which the ALJ noted "strongly suggests that [her pain level] would not currently prevent work."[32]

The ALJ also noted that Criger testified that Humira was effective in relieving her pain while she worked, which was supported by Dr. Meyers, but she stopped taking it because of the cost. The ALJ noted that the record does not show that Criger "persistently pursued any free or reduced medical treatment available to her in the community that might assist her with the cost."[33] The ALJ's observations that Criger's pain level was no worse than when she was working and that effective medication exists are sufficiently specific to identify the inconsistencies between Dr. Meyers' opinion and the objective medical evidence.

Third, Criger argues that remand is necessary because the ALJ failed to recontact Dr. Meyers for clarification of his opinion. The regulations in effect at the time of the ALJ's decision

---

[30] Decision, Doc. 13-3, p. 34.

[31] Decision, Doc. 13-3, p. 34.

[32] Decision, Doc. 13-3, p. 33.

[33] Decision, Doc. 13-3, p. 33.

in November 2011 informed claimants that more information must be sought from a medical source in certain situations:

> We will seek additional information or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.[34]

These regulations require the ALJ to recontact a treating physician when the information is inadequate to determine whether the claimant is disabled.[35] The duty to recontact the physician is triggered by the inadequacy of the evidence received from the treating physician, not by the rejection of the treating physician's opinion.[36] For example, this Court has found that an ALJ has a duty to recontact a medical source if an opinion is undated or unsigned.[37] But there is no duty to recontact a treating source if the submitted evidence is adequate to evaluate whether the claimant is disabled.[38] Here, the information received from Dr. Meyers was adequate to ascertain the basis of his opinion, and there was no necessary information missing. And Criger does not point to specific conflicts that required resolution. The evidence was adequate to evaluate whether Criger was disabled. The ALJ simply found that Dr. Meyers' opinion was entitled to less weight than others. Therefore, the ALJ had no duty to recontact Dr. Meyers.

Overall, the ALJ did not completely reject the opinion of the treating physician, Dr. Meyers. Even so, the ALJ's reasons were sufficiently specific to support assigning it less weight.

---

[34] 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). These regulations were amended effective Feb. 23, 2012.

[35] *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (citing version of 20 C.F.R. § 416.912(e) in effect at time); *Peckham v. Astrue*, 780 F. Supp. 2d 1195, 1204 (D. Kan. 2011) (same).

[36] *White*, 287 F.3d at 908; *Russell v. Astrue*, 506 Fed. Appx. 792, 794-95 (10th Cir. 2012).

[37] *Peckham*, 780 F. Supp. 2d at 1204.

[38] *See Beasley v. Colvin*, 520 Fed. Appx. 748, 752 (10th Cir. 2013).

**B. Substantial Evidence Supports the ALJ's Credibility Determination**

Criger argues that the ALJ's determination of her credibility is unsupported by the substantial evidence in the record. In his decision, the ALJ reached the following conclusion:

> The credibility of the claimant's allegations is weakened by her activities of daily living, receipt of unemployment benefits, and search for work after filing her application for disability, and her admission that her medication makes her pain tolerable, which is consistent with the effectiveness of her pain medication when she was successfully working. The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.[39]

Criger challenges the ALJ's conclusion about her credibility on each of these reasons. She also challenges the ALJ's statements about his observations of her and her ability to pay for more effective medication. Criger argues that reversal is required because the ALJ did not give good reasons grounded in the substantial evidence of the record as a whole for finding her not credible.

The ALJ, as the finder of fact, is ideally suited to assess credibility, and the Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence.[40] But credibility findings must be linked to substantial evidence and not just a conclusion dressed as a finding.[41] Generally, an ALJ's credibility determinations are treated as binding on review, recognizing that symptoms are sometimes exaggerated when applying for government benefits.[42] An evaluation of subjective allegations of pain necessarily turns on credibility.[43] If an ALJ

---

[39] Decision, Doc. 13-3, p. 38.

[40] *Wilson*, 602 F.3d at 1144.

[41] *Id.*

[42] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

[43] *White*, 287 F.3d at 909.

determines that a claimant's testimony was not credible, he has a duty to explain how he arrived at his conclusion.[44] Here, the ALJ stated the following about Criger's activities of daily living:

> With regard to activities of daily living, the claimant reported despite her allegations of debilitating symptoms, she remains completely independent in caring for her personal needs and grooming (Exhibit 5E). She is able to prepare simple meals, do her own laundry, perform light cleaning duties, drive, shop for groceries and personal necessities, pay bills, read, watch television, spend time with others, can pay attention, finish what she starts, follow both written and spoken instructions, and handle changes in routine (Exhibit 5E). The claimant has admitted certain abilities, which provide support for part of the residual functional capacity conclusion in this decision. For these reasons and the reasons listed throughout this decision, I conclude that the claimant experiences some symptoms and limitations; however, the record does not fully support the severity of the claimant's allegations.[45]

The ALJ cited a Social Security Function Report form completed by Criger in January 2011. All of the ALJ's statements about Criger's activities of daily living are linked to this form. During the oral hearing in September 2011, Criger said that she read, cooked, washed dishes, did her own laundry, maintained her own bedroom, and cared for two dogs. She testified that someone else did the grocery shopping, but her self-completed function report indicated that she did her own grocery shopping every other week. An ALJ may consider activities of daily living in evaluating a claimant's credibility.[46] The ALJ's summary of Criger's activities of daily living is affirmatively linked to evidence in the record. Therefore, the ALJ sufficiently explained the reasons why he determined that Criger's self-reported activities support his conclusion that Criger was capable of sedentary work.

---

[44] *See Larkins ex rel. M.D. v. Colvin*, 568 Fed. Appx. 646, 650 (10th Cir. 2014).

[45] Decision, Doc. 13-3, p. 34.

[46] *Zaricor-Ritchie v. Astrue*, 452 Fed. Appx. 817, 823 (10th Cir. 2011).

As for Criger receiving unemployment benefits, the ALJ made the following observation in his decision:

> For instance, the claimant acknowledged applying [for] and receiving unemployment benefits since her alleged onset date and since she filed her application for benefits. This avails a patent inconsistency between the claimant's filing of a successful claim for unemployment benefits, which requires the claimant to attest to being able to work, and the claimant's filing of a disability claim, which requires an attestation to being unable to work. Further, the claimant acknowledged during her testimony she searched for employment. This admission lends support to the contention that, although the claimant may not believe she is able to perform the job duties required of her past work activity, she does however acknowledge her symptoms would not prevent her from performing less demanding work activities that the residual functional capacity assessments accounts for in this determination.[47]

The Tenth Circuit recently concluded that an ALJ's determination that a claimant is not credible because she received unemployment benefits is "entirely proper."[48] Therefore, the ALJ's noting that Criger attested that she could work and that she searched for work supports his conclusion that she was capable of performing less demanding work activities and undermines her credibility as to the severity of her impairment.

And, as addressed earlier, there is substantial evidence in the record to support the ALJ's conclusion that medication, specifically Humira, was effective in treating her pain while she was still working. Criger testified that she had some pain relief with Humira, and the medical records indicated that she reported "significant symptom relief" with Humira in 2009.[49] Generally, if an impairment can be reasonably controlled by medication or treatment, it cannot be considered

---

[47] Decision, Doc. 13-3, p. 33-34.

[48] *Pickup v. Colvin*, 2015 WL 1515460, at *2 (10th Cir. Apr. 6, 2015).

[49] Medical Evidence of Record, Doc. 13-8, p. 26.

disabling.[50] The fact that a claimant may be unable to afford medication and may not have access to free or low-cost medical services is a legitimate excuse.[51] But all possible resources, such as clinics and public assistance agencies, must be explored. By rule, "[c]ontacts with such resources and the claimant's financial circumstances must be documented."[52] As a result, a claimant's assertions that she cannot afford medication are not convincing if she made no effort to take advantage of any available medical assistance programs.[53]

Here, the ALJ noted that Criger testified that she gave up her health insurance when she stopped working in November 2010. Further, the ALJ observed, "there is no indication she used those very resources to provide for payment of medical treatment that was deemed necessary. Further, the evidence does not reflect that the claimant has attempted to avail herself of free or reduced medical care available to her in the community."[54] The transcript shows that Criger testified that she was denied Medicaid because of her assets and that she decided against accepting indigent health insurance because of the cost. In February 2009, presumably while Criger still had health insurance, a medical record indicates that the provider planned to process a patient assistance application for Humira on Criger's behalf. But Criger has provided no documentation that this application was denied and has provided no documentation that she sought patient assistance for Humira after she lost her health insurance. Criger did not submit any documentation that she was unable to obtain free or low-cost medication, as required. Nor

---

[50] *Wiley v. Chater*, 967 F. Supp. 446, 451 (D. Kan. 1997) (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)).

[51] *Madron v. Astrue*, 311 Fed. Appx. 170, 178 (10th Cir. 2009).

[52] SSR 82-59, 1982 WL 31384, at *4 (Aug. 20, 1980).

[53] *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989).

[54] Decision, Doc. 13-3, p. 32.

does the record contain any documentation of Criger's financial circumstances, which is also required. Therefore, there is substantial evidence in the record to support the ALJ's conclusion that medication exists to alleviate Criger's condition, but she has failed to explore all possible resources to obtain the medication.

Criger argues that the ALJ failed to consider her deteriorating condition, challenging the allegation that her condition was the same as when she was working. But the ALJ did note Criger's decreased range of motion as documented in the medical records. And the ALJ noted only that her pain was at the same level of severity as when she was working, not necessarily that her overall physical condition was the same. Therefore, the ALJ's conclusion that she could perform a sedentary job less strenuous than her manufacturing job is consistent with acknowledging Criger's deteriorating condition, though not to the point of disability.

 Criger also takes issue with the ALJ noting that he made personal observations of her during the hearing, arguing that an ALJ may not reject a claimant's subjective complaints of pain based on personal observations. However, the Social Security Rules contemplate an ALJ including personal observations in assessing an individual's complaints of pain, but he is not allowed to reject an individual's complaints "solely on the basis of such personal observations."[55] Here, the ALJ emphasized that his observations "are only one factor among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and residual functioning capacity."[56] The ALJ discussed many other reasons for his credibility determination and did not reach his conclusion solely on his personal observations. Therefore, Criger's argument is without merit for this issue.

---

[55] SSR 95-5p, 1995 WL 670415, at *2 (Oct. 31, 1995).

[56] Decision, Doc. 13-3, p. 35.

**C. Substantial Evidence Supports the ALJ's Decision**

Finally, Criger argues that the ALJ's decision is further unsupported by the substantial evidence of the record as a whole. Specifically, Criger argues that her residual functioning capacity should have included no reaching in any direction and limited her handling and fingering. Had the ALJ done so, Criger argues, then she would not have been able to do the jobs suggested by the vocational expert. Criger also argues that the ALJ failed to ask the vocational expert whether her testimony was consistent with the Dictionary of Occupational Titles (DOT).

First, the Court notes that the only cited evidence about Criger's reaching ability available to the ALJ at the time of the hearing was her own testimony that she "can't reach out in front of me or reach over my head."[57] Other citations to the record about Criger's handling ability are from Dr. Myers' notes from 2012 appointments, which were after the November 2011 decision. The state agency physical residual functioning capacity assessment indicated that Criger had no manipulative limitations in reaching, handling, or fingering. Even if the Court would have made a different choice between two fairly conflicting views, the Court may not supplant the ALJ's choice.[58] As discussed earlier, substantial evidence in the record supports the ALJ's residual functioning capacity determination. Therefore, the Court may not displace it.

Second, Criger argues that the ALJ did not comply with Social Security Rule 00-4p, which requires an ALJ to inquire about and resolve any conflicts between a vocational expert's testimony and the definition of a job in the DOT.[59] Generally, when a vocational expert testifies about the requirements of a job, the ALJ has an affirmative responsibility to ask about any

---

[57] Transcript of Oral Hearing, Doc. 13-3, p. 66.

[58] *See Barnes v. Colvin*, 3 F. Supp. 3d 892, 896 (D. Kan. 2014) (quoting *Lax*, 489 F.3d at 1084).

[59] SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

possible conflict between the expert's testimony and the DOT.[60] But once a vocational expert has stated that he was relying on the DOT, the ALJ has no further duty to investigate.[61] A vocational expert's reliance can be shown by providing the DOT numbers for each position that he believed a person with the claimant's limitations could perform.[62] Here, the vocational expert gave three examples of unskilled, sedentary jobs he believed someone with Criger's limitations could peform and gave the DOT code for each one. Specifically, the vocational expert's examples were eyeglass frame packager with DOT code 713.684-038, lens inspector with DOT code 716.687-030, and film inspector with DOT code 726.684-050. Because the DOT was the stated source for the vocational expert's information, the ALJ had no further duty to inquire about potential conflicts.[63]

Criger asserts there is a conflict between the vocational expert's testimony and the DOT because the vocational expert testified that all three jobs required no overhead reaching. The DOT lists that the film inspector job requires constant reaching and the eyeglass frame packager and lens inspector jobs require frequent reaching. The DOT does not separately list overhead reaching as a limitation. A job that requires constant or frequent reaching does not necessarily require overhead reaching. So in this circumstance, a vocational expert's testimony does not conflict with the DOT as much as it clarifies how the broad characterizations listed in the DOT apply to this case.[64] Here, the vocational expert was aware of Criger's limitation on overhead

[60] SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

[61] *Gibbons v. Barnhart*, 85 Fed. Appx. 88, 93 (10th Cir. 2003).

[62] *See Lindsey v. Astrue*, 2011 WL 1533490, at *6 (D. Kan. April 22, 2011).

[63] *See id.*

[64] *See Sterling v. Astrue*, 2008 WL 45415, at *4-5 (D. Kan. Jan. 2, 2008) (citing *Segovia v. Astrue*, 226 Fed. Appx. 801, 804 (10th Cir. 2007).

reaching and testified that the three jobs he gave as examples required no overhead reaching. Further, Criger's attorney questioned the vocational expert and did not develop any evidence of a conflict between his testimony and the DOT. The ALJ had no duty to resolve a conflict that did not exist and explicitly stated in his decision that the vocational expert's testimony was consistent with the information in the DOT. Any failure by the ALJ to affirmatively ask about potential conflicts is harmless because there were no conflicts between the vocational expert's testimony and the DOT's job descriptions.[65]

In conclusion, the Court finds that the ALJ's decision is supported by substantial evidence. The Court finds no reason to remand the case. Thus, the Court affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 16th day of June, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[65] *See Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009).

-18-